IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

|  |  |  |
|---|---|---|
| HECYERSON EDUARDO BETANCOURT BLANCO, | § § § § § § § § § § § § § § § | 5-25-CV-01412-FB-RBF |
| *Plaintiff,* | | |
| vs. | | |
| PAM BONDI, UNITED STATES ATTORNEY GENERAL; KRISTI LYNN NOEM, SECRETARY OF THE UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TODD M. LYONS, DIRECTOR OF UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; SYLVESTER M ORTEGA, FIELD OFFICE DIRECTOR FOR DETENTION AND REMOVAL, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; AND WARDEN WAYMON BARRY, KARNES COUNTY DETENTION FACILITY; | | |
| *Defendants.* | | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns Petitioner's pending Petition for Writ of Habeas Corpus. *See* Dkt. No. 1. The District Judge referred pretrial matters for resolution by the Magistrate Judge, pursuant to Rules CV-72 and 1 of Appendix C to the Local Rules for the United States District Court for the Western District of Texas. *See* Dkt. No. 3. Authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is

recommended that the Petition should be **GRANTED** and that Respondents should be **ORDERED** to release Petitioner from custody.

### Factual and Procedural Background

The pertinent facts are undisputed. Petitioner Hecyerson Eduardo Betancourt Blanco is a Venezuelan national who entered the United States on September 25, 2023. Dkt. No. 1 at 7; Dkt. No. 6 at 2-3. DHS apprehended him upon his physical entry into the United States, served him with a Notice to Appear, and released him into the country three days later using a Form I-220A, which is also called an "Order of Release on Recognizance" or "ORR." *See* Dkt. No. 1 at 7-8; Dkt. No.6 at 6. The ORR specifically advised Petitioner of the following:

> You have been arrested and placed in removal proceedings. *In accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations*, you are being released on your own recognizance provided you comply with the following conditions . . . .

Dkt. No. 2-1 at 1 (emphasis added). Section 236 of the Immigration and Nationality Act ("INA"), cited by Plaintiff's ORR, is codified at 8 U.S.C. § 1226. "Title 8 of the Code of Federal Regulations" and its "applicable provisions" creates a comprehensive, intricate web of regulations governing immigration. *See* 8 C.F.R. §§ 1-1399. In painstaking (to say the least) detail, these regulations govern, among other things, release on recognizance as well as "[a]pprehension, custody, and detention" of those previously released. *See, e.g.*, 8 C.F.R. §§ 236.1, 1236.1. They provide in Chapter 1 of Title 8, for example, Department of Homeland Security regulations governing the release of certain "[u]nremovable aliens and certain long-term detainees." *Id*. § 236.1(c)(6). These provisions are largely mirrored in Title V. *See id.* § 1236.1. They further provide that someone released on recognizance can be re-arrested pursuant to a warrant. *Id*. §§ 236.1(b), 1236.1(b).

Petitioner's ORR form specified conditions governing his release, such as the need to report for any hearing or interview as directed by the Department of Homeland Security or Executive Office for Immigration review and the need to surrender for removal from the United States "if so ordered." Dkt. No. 2-1 at 1. The ORR is dated September 28, 2023, and it was signed by Petitioner, an immigration officer, and the DHS Acting/Patrol Agent in Charge. *Id*.

On the same day in September of 2023, Petitioner was served with a Notice to Appear, DHS Form I-862. *Id*. at 4. The Notice to Appear provided that Petitioner was "an alien present in the United States who has not been admitted or paroled." *Id*. A separate line on the form with a check box, left unchecked, provided authorities the opportunity to designate Petitioner "an arriving alien." *Id*. The form further specified, "it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law: 212(a)(6)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id*. The Notice to Appear set Petitioner for a hearing to be held on November 13, 2023, in front of an immigration judge in Baltimore, Maryland. *Id*. Petitioner did not sign the Notice to Appear, although the "Acting/Patrol Agent in Charge" and another Border Patrol Agent did. *Id*. at 4-5.

Petitioner timely applied for asylum in August of 2024, and he was then scheduled for a master calendar hearing in front of Immigration Judge to take place on December 5, 2025; the parties have yet to provide the Court with an update on the status of the asylum application. *See* Dkt. No. 1 at 8; Dkt. No. 6 at 2. Before his hearing, on August 30, 2025, Petitioner was arrested by a Denton County sheriff's deputy for failure to yield, a traffic infraction. Dkt. No. 1 at 8. The deputy detained Petitioner for reasons not reflected in the record and notified Immigration and

Customs Enforcement (ICE), which then issued an administrative warrant and subsequently arrested and detained him. *See id.* at 7-8; *see generally* Dkt. No. 6 (providing no explanation or context for Petitioner's detention by Denton County).

DHS then placed Petitioner in removal proceedings before the Pearsall Immigration Court, pursuant to 8 U.S.C. § 1229a. *See* Dkt. No. 1 at 8. ICE charged him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), *id.* 1 at 8, which provides that aliens are inadmissible if they "are present in the United States without having been admitted or paroled" or have "arrive[d] in the United States at any time or place other than as designated by the Attorney General." 8 U.S.C. § 1182(a)(6)(A)(i). Petitioner was then transferred to Karnes County Detention Center and has, it appears, been held there since August 30, 2025. Dkt. No. 1 at 8.

Petitioner avers, and Respondents do not contest, that ICE "issued a custody determination to continue Petitioner's detention without an opportunity to post bond or be released on other conditions." *Id.* In its briefing, the Government argues that Petitioner was actually initially detained, contrary to his ORR, or perhaps always was subject to detention under 8 U.S.C. § 1225(b)(1)(A)(iii)(II), which by its plain text describes an alien "who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." To the Court's knowledge, the Respondents' November 25, 2025, Response to the Petition for Writ of Habeas Corpus, Dkt. No. 6, is the first and only time Respondents have invoked § 1225(b)(1) as the basis for Petitioner's August 30, 2025, arrest and subsequent continued detention. *See generally* Dkt. No. 1 (assuming and arguing that Petitioner is being detained under 8 U.S.C. § 1225(b)(2)).

Petitioner now brings the present Petition for Writ of Habeas Corpus, asking that the Court, *inter alia*, order him released or, in the alternative, direct that he be provided a bond hearing pursuant to 8 U.S.C. § 1226(a). Dkt. No. 1. He explains that on July 8, 2025, "ICE, in coordination with DOJ, announced a new policy that rejected well-established understanding of the statutory framework" applicable to him and those in a similar situation and thereby "reversed decades of practice." *Id*. at 11 (quotation omitted). As Petitioner understands things, this policy, as further explained and refined in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), mandates that "all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for [Immigration Judge] bond hearings." *Id*. at 12.

Petitioner ultimately argues, among other things, that: (1) his detention and eligibility for a bond hearing are governed by 8 U.S.C. § 1226(a), not § 1225(b) as the Government contends, and that the Government has violated the provisions of the INA by detaining him pursuant to § 1225(b); (2) his detention violates bond regulations set forth in 8 C.F.R. §§ 236.1, 1236.1, and 1003.19; and (3) his "re-arrest . . . on August 30, 2025," and subsequent detention, *inter alia*, violate his right to due process. Dkt. No. 1 at 17-19.

On December 19, 2025, the Court benefitted from an evidentiary hearing and a full and frank discussion with the parties about the factual circumstances of the case, the evolving legal frameworks, and the developing law in this area. *See* Dkt. No. 7.

**Analysis**

**A.    A Familiar Standard Governs the Habeas Petition.**

A district court may grant a writ of habeas corpus to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The

petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Villanueva v. Tate*, No. 4:25-CV-03364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (citing *Parke v. Raley*, 506 U.S. 20, 31 (1992), and *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). A court considering a habeas petition must "determine the facts[] and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## B.    The Court Has Jurisdiction Over the Core Issues Presented.

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotation marks and citation omitted). Respondents cite the following jurisdiction-stripping and channeling provisions of the INA to argue that the Court does not have jurisdiction to entertain the Petition: 8 U.S.C. § 1252(g), § 1225(b)(4), and 1252(b)(9). *See* Dkt. No. 6 at 11-12.

Respondents' jurisdictional arguments essentially rest on the flawed contention that the present Petition is merely a challenge to "the decision to detain [Petitioner] in the first place or to seek a removal order against him," or that the Petition is otherwise necessarily a challenge to "any part of the process by which his removability will be determined." *Id*. at 11. Some aspects of Respondents' jurisdictional objections are well taken, however, and there are surely aspects of Petitioner's arguments that the Court lacks jurisdiction to entertain. But Respondents' primary argument is that there is no jurisdiction over any aspect of the case, and that argument rests on a flawed premise. There is no need, therefore, to parse Respondents' discrete jurisdictional arguments; the Court need only establish it has jurisdiction sufficient to address the merits of at least one of Petitioner's arguments, which it does.

6

This Court has previously rejected Respondents' jurisdictional arguments with regard to § 1252(g) in materially identical circumstances. *See, e.g.*, *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923 (W.D. Tex. Oct. 21, 2025). In *Hernandez-Fernandez*, for example, the Court explained that a petitioner in these circumstances is not necessarily challenging the execution or processing of a removal order but may instead be challenging his ongoing detention as a violation of statutory or procedural due process guarantees. *See Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, *2-6 (W.D. Tex. Oct. 21, 2025). Petitioner's due process challenge here, as in *Hernandez-Fernandez*, attacks his "ongoing detention" and thereby is aimed at "enforcing his constitutional right to due process in the context of the removal proceedings—not the legitimacy of the removal proceedings or any removal order." *Id*. at *3. Thus, the petitioner in *Hernandez-Fernandez* was "not challenging Respondents' decision to execute a removal order," nor "Respondents' decision to commence or adjudicate his removal proceedings." *Id*. The same is true here. Moreover, the record in *Hernandez-Fernandez* "[did] not indicate that there was a [final] removal order to execute," *id*., which it appears is also true here. *See generally* Dkt. Nos. 1, 2, & 6 (none of which cite or attach a removal order against Petitioner). In short, this Court has jurisdiction to evaluate Respondent's interpretation and application of 8 U.S.C. §§ 1225(b) and 1226(a) to determine whether Petitioner's constitutional and other federal rights are being violated.

### C.    Respondents' Actions Are Unlawful.

Petitioner's ORR specified that he was being detained under 8 U.S.C. § 1226 and applicable regulations. *See* Dkt. No. 2-1 at 1. In exercising discretion to release him, Respondents granted Petitioner various rights, not the least (and not the only) of which was the right to be at liberty in the country. Respondents also invoked regulations applicable to release

under § 1226. Respondents now contend, based on a new interpretation of the governing statutory scheme, that: (1) § 1226(a) and regulations applicable to it do not apply here, even though Respondents previously said the opposite; (2) § 1225(b)(1) applies as a matter of plain statutory text, even though Respondents only invoked that provision for the first time months after they re-arrested and detained Petitioner; and (3) only the process outlined by § 1225(b)(1) ever was or is owed to Petitioner. Respondents' arguments fail, and the Petition should thus be granted.

1. *As a purely factual matter, Respondents' § 1225(b) and § 1226(a) arguments fail*. Respondents issued paperwork to Petitioner specifying that § 1226 and applicable regulations governed Petitioner's release. Dkt. No. 2-1 at 1. Moreover, the September 28, 2023, Notice to Appear issued to Petitioner designated him as "an alien present in the United States," *id.* at 4, not "an arriving alien" potentially subject to § 1225(b)(1). Indeed, a separate, unchecked box on the Notice to Appear form could have been checked to reflect Petitioner was at that time "an arriving alien" of the type contemplated in § 1225(b)(1). *Id*. Any argument that Petitioner, as a purely factual matter, is somehow now "an arriving alien" who is subject to §1225(b)(1) because he is "arriving" is false. Respondents' own form, which has never been updated, changed, or superseded to the Court's knowledge (other than the Government's briefing, written and submitted months after the fact) does not support any assertion that, as a matter of fact, Petitioner is "an arriving alien."

2. *Respondents cannot re-classify, re-arrest, and detain Petitioner under §1225(b)(1) without any process*. Many courts within and outside this District and Circuit have addressed whether a petitioner in these circumstances can properly be subject to re-arrest and detention under §1225(b), with the courts sometimes couching the discussion in terms of a

constitutional issue and sometimes as a statutory-interpretation issue. *See, e.g.*, *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, \*7 (W.D. Tex. Oct. 21, 2025) (collecting cases, including in the Fifth Circuit); *Bethancourt Soto v. Soto*, No. 25-CV-16200, 2025 WL 2976572, \*7 (D.N.J. Oct. 22, 2025) (collecting cases). The Fifth Circuit has not yet spoken on the issue; nor, to this Court's knowledge, has any other Circuit Court or the U.S. Supreme Court. The overwhelming weight of persuasive authority, however, agrees with Petitioner's position that § 1226(a)—and not § 1225(b)—applies such that the Government cannot unilaterally reclassify Petitioner as a § 1225(b) detainee and thereby deny him any opportunity for a bond hearing. *See Hernandez-Fernandez*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, \*7-\*11 (finding a Fifth Amendment due process violation under materially similar circumstances to those presented here); *Bethancourt Soto v. Soto*, No. 25-CV-16200, 2025 WL 2976572, at \*7 (rejecting the theory of statutory interpretation Respondents offer here and collecting over twenty cases that reach the same conclusion); *Report and Recommendation* in 5-25-CV-01038-OLG-RBF, Dkt. No. 13 in *Lliguicota Mayancela v. Superintendent of Karnes Cnty. Immigr. Processing Ctr.*; *but see, e.g.*, *Vargas Lopez v. Trump*, 2025 WL 2780351 (D. Neb. Sept. 30, 2025) (declining habeas relief in similar circumstances but citing significant procedural issues with the habeas petition).

Because the interplay between §§ 1225(b) and 1226(a) has received considerable treatment in courts across the country, including in this District and Division specifically, the Court will not rehash those discussions at length here. Suffice it to say, this Court adopts the reasoning from several decisions from within this District and elsewhere that concludes, in materially identical circumstances, that mandatory detention under § 1225(b) does not properly apply in circumstances such as those presented here. *See, e.g.*, *Hernandez-Fernandez*, No. 5:25-

CV-00773-JKP, 2025 WL 2976923; *Mayancela v. Superintendent of Karnes Cnty. Immigr. Processing Ctr.*, No. SA-25-CV-1038-OLG, 2025 WL 3540074 (W.D. Tex. Dec. 9, 2025); Order on Petitioner's Motion for a Temporary Restraining Order, Dkt. No. 11, *Pereira-Verdi v. Lyons*, 5-25-CV-01187-XR (W.D. Tex. Oct. 10, 2025);*Vargas v. Bondi*, No. SA-25-CV-1023-FB (HJB), 2025 WL 3300446 (W.D. Tex. Nov. 12, 2025), *report and recommendation adopted sub nom. Vargas v. Bondi*, No. SA-25-CV-1023-FB, 2025 WL 3300141 (W.D. Tex. Nov. 26, 2025). The following excerpt from the pertinent discussion in the *Vargas* Report and Recommendation is particularly illustrative:

> Respondents' interpretation of § 1252(b)(2) does not accord with the plain language of the statutory text or the settled rules by which it is to be interpreted. The plain language of § 1252(b)(2) applies its mandatory-detention provision only when the applicant for admission is "seeking admission." *See* 8 U.S.C. § 1252(b)(2)(A). At the hearing before the undersigned, Respondents argued that "seeking admission" and being an "applicant for admission" are synonymous. But this argument is contrary to established canons of statutory interpretation that "a variation in terms suggests a variation in meaning," and that "[w]ords are to be given the meaning that proper grammar and usage would assign them." *Covarrubias* [*v. Vergara*, No. 5:25-CV-112], 2025 WL 2950097, at *4 [(S.D. Tex. Oct. 8, 2025)] (quoting Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 170, 140 (2012)). "Seeking" is a "present-tense, or current, ongoing action, and varies materially from the passive state of being an applicant." *Covarrubias*, 2025 WL 295007, at *4. And the INA specifically defines "admission" as "lawful entry . . . into the United States after inspection and authorization by an immigration officer." *See* 8 U.S.C. § 1101(a)(13)(A). When Petitioner was taken into custody, . . . he was not "seeking admission" because he was not seeking "lawful entry into the United States," let alone after inspection and authorization by an immigration officer. Accordingly, Respondents' interpretation of § 1252(b)(2) does not accord with the language of the statute.
>
> Second, the Supreme Court's discussion of the relationship between §§ 1225 and 1226 in *Jennings* seriously calls Respondents' interpretation into question. In that case, the Court summarized that relationship as follows:
>
>> U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal

proceedings under §§ 1226(a) and (c).

*Jennings*, 583 U.S. at 289 (emphasis added). The distinction drawn in *Jennings*, between those immigrants "seeking admission into the country," and those who are "already in the country," aligns perfectly with the text-based analysis set out in the preceding paragraph.[]

*Vargas*, No. SA-25-CV-1023-FB (HJB), 2025 WL 3300446, at *8-*9. Although the above discussion focuses on § 1225(b)(2) and Respondents here claim that detention is instead governed by § 1225(b)(1), Respondent's statutory interpretation argument is effectively the same. The argument rests on misclassifying Petitioner as an "arriving alien" or designating him as "inadmissible under section 1182(a)(6)" and, because of this designation, necessarily not amenable to § 1226(a), and it fails for the same reasons as the above-mentioned §1225(b)(2) argument. As described in *Jennings*, the statute contemplates a distinction between aliens, on one hand, who are seeking admission into the country (or are arriving in the country) and, on the other hand, those who are already in the country. *See Jennings*, 583 U.S. at 289.

Petitioner is not properly subject to detention under § 1225(b)(1) as "an alien . . . who is arriving" because he isn't "arriving"—he has been present in the country and at large for several years pursuant to the ORR and § 1226(a).  Nor is there any basis here to claim that he is somehow effectively still "arriving" as a purely legal matter, as there might be if, for example, he had been paroled into the country pursuant to 8 U.S.C. § 1182(d)(5). That provision, unlike § 1226(a), expressly provides that "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled . . . ." 8 U.S.C. § 1182(d)(5).

**3**.    *Several features of this case warrant further emphasis*. The Court briefly notes the following concerns. *First*, Petitioner appears to have only learned from the Response to his Petition that Respondents are detaining him under § 1225(b)(1). Indeed, the Petition itself

11

operates under the assumption that Petitioner is detained pursuant to § 1225(b)(2), not § 1225(b)(1). *See generally* Dkt. No. 1 (assuming, based on widespread government practice, that Petitioner was re-detained under § 1225(b)(2)). But differences between arrest and detention authority under § 1225(b)(1) and (b)(2) could materially affect due process and other concerns in a given case. The failure to *timely* clarify—likely ahead of, or at least contemporaneous with, re-arrest and detention—which authority purportedly authorizes re-arrest and detention raises considerable due process concerns. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects.").

*Second*, immigration officials initially released Petitioner and invoked § 1226 and applicable regulations when doing so, yet they re-arrested and detained him without ever addressing § 1226 or those regulations. Having purported to provide a set of rights and regulations to govern Petitioner's release, Respondents' apparent belief that those rights and regulations did not need to be addressed, acknowledged, or followed before Petitioner was re-arrested and detained raises considerable due process concerns. *See, e.g.*, *Goldberg v. Kelly*, 397 U.S. 254, 262-63 (1970) ("The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be condemned to suffer grievous loss … and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication.") (internal quotations and citations omitted). The Court also wonders whether some form of revocation proceeding is required in these circumstances, as a matter of due process.

*Third*, Petitioner was detained following a traffic stop that may have been prolonged solely to allow ICE to arrive at the scene and determine, while Petitioner was presumably not

free to leave, whether Petitioner was subject to immigration detention. *See* Dkt. No. 1 at 8. Although the Court has no other information about the stop, the information presently before the Court raises constitutional concerns. *See, e.g.*, *Rodriguez v. United States*, 575 U.S. 348, 350 (2015) ("We hold that a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures.").

*Fourth*, it is apparently Respondents' position that no individualized determination need be made regarding the re-arrest and detention authority applicable to an entire class of individuals presently at liberty in the United States, even though each may be released pursuant to any of a variety of different legal authorities. *See* Dkt. No. 6 at 6 (arguing that Petitioner's initial release from custody after entry into the United States under § 1226(a) was "either in error or in the exercise of discretion," but that this initial decision "does not change the fact he was an applicant for admission at the time he was initially apprehended" under the Government's new interpretation of the statute). Under Respondents' detain-now-and-explain-later method, there would be no case-by-case determination involved to ascertain, for example, whether the circumstances governing an individual released pursuant to § 1226(a) might differ from those of another individual released pursuant to § 1182(d)(5). If this is indeed the Government's position, it is troubling and stands in considerable tension with fundamental due process guarantees. *See, e.g.*, *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (stating, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings" and that "detainees are entitled to notice and opportunity to be heard appropriate to the nature of the case.") (internal quotations and citations omitted).

*Fifth*, there is considerable doubt as to whether post-deprivation tort remedies are or would be available here if a constitutional due process violation has occurred. A *Bivens* action

13

would be a challenge under prevailing Supreme Court precedent, to say the least. *See Egbert v. Boule*, 596 U.S. 482, 491-93 (2022); *Ziglar v. Abbasi*, 582 U.S. 120, 135-37 (2017). And the absence of a meaningful post-deprivation remedy may well increase the need for pre-deprivation process. *See Zinermon v. Burch*, 494 U.S. 113, 128-29 (1990); *see also Zadvydas v. Davis*, 533 U.S. at 690; *Trump v. J. G. G.*, 604 U.S. 670, 671-73 (2025).

### D.      Petitioner Should Be Released from Custody.

Having determined that Petitioner's detention cannot continue unaffected in these circumstances, the Court turns to the appropriate remedy. At the hearing held on December 19, 2025, the Government requested that should this Court be inclined to recommend relief for Petitioner, the relief granted should come in the form of an order of release, not an order that a § 1226(a) bond hearing be held. Counsel for Petitioner agreed.

### Conclusion and Recommendation

For the reasons discussed above, it is **RECOMMENDED** that the Petition for Writ of Habeas Corpus, Dkt. No. 1, be **GRANTED**, and that Respondents should be **ORDERED** to release Petitioner from custody. The Court notes that it will shorten the objection period to seven days, as discussed at the hearing and provided below.

**IT IS FURTHER RECOMMENDED** that the Court **ORDER** that Petitioner, upon his release, shall not be re-arrested and detained pursuant to 8 U.S.C. § 1225(b)(1), barring some material change in circumstances justifying such detention and not already addressed by the present habeas proceedings. *See* Order on Petitioner's Motion for a Temporary Restraining Order, Dkt. No. 11 at *7, *Pereira-Verdi v. Lyons et al*, 5-25-CV-01187-XR (W.D. Tex. Oct. 10, 2025) (enjoining arrest and detention of "Petitioner without notice and a pre-deprivation hearing before a neutral decision maker pursuant to 8 U.S.C. § 1226.").

Having considered and acted upon all matters for which the above-entitled and numbered case was referred, it is **ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

**Instructions for Service and Notice of Right to Object/Appeal**

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this Report and Recommendation must *typically* be filed within fourteen (14) day**s** after being served with a copy of same, but this time period may be further modified by the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In light of the equities in this case, such as the deprivation of liberty at issue, the length of time that Petitioner already been detained, and the recommendation that Petitioner be released, the deadline to file objections to this Report and Recommendation is shortened as follows: **<u>the parties must file any written objections within seven (7) days after receipt of a copy of this Report and Recommendation.</u>**

Objections, responses, and replies must comply with the same page limits as other filings, unless otherwise excused by the district court's standing orders. *See* Rule CV-7. The objecting party shall file the objections with the clerk of the court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*,

474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

**SIGNED** this 30th day of December, 2025.

**RICHARD B. FARRER**
**UNITED STATES MAGISTRATE JUDGE**